**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| Shelnia Losoyna Tucker, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:16-cv-00842-JMC |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff Shelnia Losoyna Tucker's ("Plaintiff")

Objections to the Magistrate Judge's Report and Recommendation ("Objections") (ECF No. 28),

filed on May 30, 2017. Plaintiff filed a Complaint seeking judicial review of the final decision of

the Acting Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).

(ECF No. 1.) The Magistrate Judge determined that the Administrative Law Judge ("ALJ")

performed adequate review of the whole record evidence finding that (1) Plaintiff failed to

establish a good cause for failing to submit additional evidence to the Appeals Council, (2)

Plaintiff's contention that the ALJ failed to properly evaluate Dr. Kimberly K. Kruse's opinion

evidence is without merit, and (3) the ALJ applied the proper legal standards in determining

Plaintiff's residual functional capacity. (ECF No. 26.) Accordingly, the Magistrate Judge

recommended that the court affirm the Acting Commissioner's final decision. (*Id.*)

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security ("Acting
Commissioner") on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is
substituted for former Acting Commissioner Carolyn W. Colvin as a Defendant in this lawsuit.

For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Acting Commissioner's final decision.

## I. BACKGROUND

On February 14, 2012, Plaintiff filed an application for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, alleging that she became disabled on July 18, 2010. (ECF No. 10-2 at 23-34.) At the administrative hearing before the ALJ, Plaintiff amended her alleged onset date from July 18, 2010 to December 31, 2012. (*Id*.) After conducting a hearing regarding Plaintiff's application for Social Security benefits, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act from December 31, 2012, the amended alleged onset date, through September 30, 2016, the date last insured. (*Id.*) The ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees and right ankle, carpal tunnel syndrome, rotator cuff syndrome, obstructive sleep apnea, and obesity. (*Id*.) However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (*Id*.) Furthermore, the ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limits including lifting or carrying up to 20 pounds occasionally and 10 pounds frequently, standing or walking for approximately 6 hours of an 8-hour work day, and sitting for approximately 6 hours of an 8-hour workday with normal breaks. (*Id*.)

On October 15, 2014, Plaintiff requested a review of the ALJ's decision by the Social Security Administration's Appeals Council ("Appeals Council"). (ECF No. 10-2 at 19.) On November 24, 2014, the Appeals Council granted Plaintiff's request for extension of time before

it issued a decision on Plaintiff's application for Social Security benefits. (*Id*.) Additionally, the Appeals Council issued a notice to Plaintiff stating that any more evidence must be sent "within 25 days of the date of this letter" and it would "not allow more time to send information except for very good reasons." (ECF No. 10-2 at 11.) This notice also stated that if the Appeals Council did not hear from Plaintiff within twenty-five (25) days it would assume Plaintiff did not want to send any more information and would proceed with its action based on the record before the ALJ. (*Id*.) However, Plaintiff did not submit any additional evidence by the deadline of December 19, 2014. While reviewing the ALJ's decision, the Appeals Council found that the ALJ's "assessed residual functional capacity is inconsistent with the hypothetical questions posed to the vocational expert at the hearing with respect to [Plaintiff's] environmental and manipulative limitations." (ECF No. 10-4 at 69.)

On November 25, 2015, the Appeals Council sent Plaintiff a "Notice of Appeals Council Action" stating it had granted Plaintiff's request for review of the ALJ's decision and determined that the ALJ's decision was not supported by substantial evidence, but planned to make a decision finding that Plaintiff is not disabled. (ECF No. 10-4 at 68-71.) The Appeals Council stated that it "plans to adopt Findings 1 through 4 and 6 of the Administrative Law Judge decision, but plans to find that you have the residual functional capacity consistent with the limitations included in the second hypothetical posed to the vocational expert." (*Id*.) The Appeals Council notified Plaintiff to provide any further evidence within thirty (30) days of the date of the letter or could request for an appearance before the Appeals Council within thirty (30) days. (*Id.*) Plaintiff submitted a handwritten letter dated December 5, 2015 for the Appeals Council's consideration. (ECF No. 10-6 at 62.) On January 11, 2016, the Appeals Council issued a decision finding that Plaintiff was not disabled "at any time through the date of the Administrative Law

Judge's decision, September 11, 2014." (ECF No. 10-2 at 5-9.) The Appeals Council adopted the ALJ's findings under steps 1, 2, 3, and 4 of the sequential evaluation, but did not accept the ALJ's residual functional capacity assessment and limitations. The Appeals Council stated that it had reviewed and included Plaintiff's correspondence dated December 5, 2015 as a supplemental exhibit. (*Id*.)

On May 15, 2017, the Magistrate Judge issued a Report recommending that this court affirm the Acting Commissioner's decision to deny Plaintiff's application for Social Security benefits. (ECF No. 26 at 25.) On May 30, 2017, Plaintiff filed an objection to the Magistrate Judge's Report. (ECF No. 28.) In the Objections, Plaintiff states that (1) new medical evidence faxed to the Appeals Council on September 2, 2015 was not incorporated in its decision, (2) the Magistrate Judge failed to consider Dr. Kruse's opinion that Plaintiff was capable of performing "simple, repetitive tasks" and did not provide details of how the vocational expert's testimony supports the ALJ's determination that Plaintiff can perform semi-skilled work, and (3) the Magistrate Judge failed to address the ALJ's findings regarding her obesity and how it limits the ability to work. (*Id*.)

On June 8, 2017, the Acting Commissioner filed a response explaining that the court should overrule Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 30 at 1.) The Acting Commissioner explained that Plaintiff's Objections generally reiterate the arguments stated in her initial brief and that the ALJ adequately considered the vocational expert's testimony as to Plaintiff's past relevant work as a childcare worker, which did not require the performance of work-related activities restricted by her residual functional capacity. (*Id*. at 2.)

## II. LEGAL STANDARDS

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976.) The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to for clear error, including those portions to which only "general and conclusory" objections have been made. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *See also Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Id.*

"[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## III. ANALYSIS

### A. The Magistrate Judge's Review

In the Report, the Magistrate Judge considered Plaintiff's contentions that her impairments are more limiting than the ALJ's assessment. Plaintiff argues that her application for Social Security benefits should be remanded for the Acting Commissioner's consideration of new opinion evidence which was submitted to the Appeals Council on September 2, 2015; that the Magistrate Judge did not address the ALJ's failure to properly assess opinion evidence; and that the ALJ did not explain his findings regarding Plaintiff's residual functional capacity as required by SSR 96-8p. (ECF No. 15.)

First, Plaintiff contends that the Appeals Council failed to add to the Supplemental List of Exhibits a correspondence of September 2, 2015, consisting of a Functional Capacity Questionnaire completed by Stewart Darby, PA, and a letter from Lisa A. Williams, M. Ed, LPC, regarding Plaintiff's mental health treatment. (ECF No. 15 at 13-14.) Plaintiff argues that she relies on this new evidence faxed to the Appeals Council, which allegedly explains the ALJ's concerns regarding the lack of treatment records for her fibromyalgia diagnosis or documentation of her specific mental health treatment for depression. (*Id.* at 14.) Plaintiff "asserts that the evidentiary gap noted by the ALJ has been filled by the evidence that was submitted, but not included in the record, on September 2, 2015." (*Id.* at 15.) However, the Acting Commissioner argues that because Plaintiff failed to submit the evidence in a timely manner to the Appeals Council, the Appeals Council "was not required to discuss the evidence or include it in the record" pursuant to 20 C.F.R. § 404.968(a)-(b). (ECF No. 17 at 18-19.) The Acting

Commissioner contends that even if this evidence was timely submitted to the Appeals Council, Plaintiff would be unable to meet her burden of showing that it was both "new" and "material" because the submitted documents post-date the relevant period and were nonacceptable medical sources. (*Id.* at 19-20.)

The Magistrate Judge explained that this additional evidence has not been made a part of the Appeals Council's administrative record. However, this evidence could only be made part of the record if Plaintiff meets her burden pursuant to sentence six of 42 U.S.C. § 405(g). (ECF No. 26 at 15.) To meet this burden, Plaintiff must show "good cause" for the evidence not having been made part of the record and demonstrate that the evidence is both "new" and "material." *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Upon evaluating the record evidence, the Magistrate Judge determined that Plaintiff, through her representative, requested Appeals Council's review of the ALJ's decision on October 14, 2014, and requested "an Appeals Council BAR CODE that can be used to submit additional evidence." (ECF No. 26 at 17-18.) Plaintiff later requested an extension of time to submit documents during this period. (*Id.*) On November 24, 2014, the Appeals Council granted Plaintiff an additional twenty-five (25) days to submit more information. (*Id.*) However, over nine (9) months later, on September 2, 2015, Plaintiff faxed additional evidence to the Appeals Council that included a functional capacity questionnaire dated May 26, 2015, and an opinion letter dated June 23, 2015 without providing any reason for the delay. (*Id.*)

After reviewing the parties' briefs, the Magistrate Judge ordered Plaintiff to file a response to Defendant's brief and to discuss the issue of timeliness of the new evidence submitted to the Appeals Council. (ECF No. 26 at 18-19.) In her supplemental briefing, Plaintiff contends that "the Appeals Council granting an additional 30 days to submit new evidence in

November, 2015 prevents any argument that evidence submitted to it prior to that date was submitted untimely." (*Id*.) Plaintiff further submits that the Acting Commissioner's suggestion regarding untimeliness is post hoc reasoning because the Appeals Council did not indicate the evidence was untimely, it was not clear the Appeals Council considered the evidence, and there is no indication that Plaintiff should have "re-submitted" the same evidence after the November 2015 notice. (*Id*.)

The Magistrate Judge determined that Plaintiff was on constructive notice that the Appeals Council had not considered the September 2015 evidence nor made it a part of the record. On November 25, 2015, the Appeals Council issued a notice stating that in granting Plaintiff's request for review, it "considered the written record that was before the Administrative Law Judge and the testimony at the hearing." (ECF No. 26 at 18-19.) The Appeals Council informed Plaintiff to "send us more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter." The Magistrate Judge explained that if Plaintiff had any question about the submitted evidence, she could have made an inquiry to the Appeals Council. (*Id*.) Therefore, pursuant to sentence six of U.S.C. § 405(g), the Magistrate Judge concluded that Plaintiff failed to establish good cause for failing to timely submit the additional evidence to the Appeals Council. (*Id*.)

Next, the Magistrate Judge concluded that the ALJ determined that the record evidence supported Plaintiff's residual functional capacity assessment and that she was capable of performing her prior related work as a childcare worker. (ECF No. 26 at 22-25.) The Magistrate Judge found that the ALJ explained his consideration of Dr. Kruse's one-time examination of Plaintiff on August 30, 2012, which discusses her allegations of learning problems and depression. During Plaintiff's examination, Dr. Kruse had to end the mental status examination

explaining that Plaintiff's "performance is invalid due to Ganser responding and a strong indication of negative impression management was noted." (ECF No. 10-7 at 34-35.) Hence, Dr. Kruse did not diagnose Plaintiff, but deferred to her medical record. (*Id*.) The ALJ explained that he considered Plaintiff's symptoms, her medical records, and the opinion evidence. (ECF No. 10-2 at 26-32.) Furthermore, the ALJ stated that Plaintiff's "sporadic treatment of acute complaints is inconsistent with a finding of persistently disabling conditions" because her "treatment records document minimal findings." (*Id*.) Most importantly, no treating source provided any opinion of Plaintiff's physical or mental functional capabilities. The ALJ also stated that he evaluated opinion evidence under the regulatory factors and gave "little weight" to the September 2012 opinion of Dr. Thomas Motycka because Plaintiff's "vocational prospects are outside the area of his expertise." (*Id*.) Regarding Dr. Kruse's evaluation of Plaintiff, the ALJ explained that "Dr. Kruse did not specifically opine as to the claimant's ability to perform work activity." (*Id*.)

The Magistrate Judge determined that because Dr. Kruse's relationship with Plaintiff was solely for a disability report and not based on a treating relationship, she is considered a non-treating source. 20 C.F.R. § 404.1527(a)(2).[2] (ECF No. 26 at 19-22.) Despite this deficiency in Dr. Kruse's opinion, the ALJ stated that he "considered the findings contained within Dr. Kruse's report, which are consistent with the evidence of record as a whole." (*Id*.) The ALJ concluded that the record evidence supported his residual functional capacity assessment and that Plaintiff is capable of performing her prior relevant work as a childcare worker. (*Id)*. The

---

[2] Pursuant to 82 FR 5844, the Social Security Administration is no longer required to give special weight to medical opinions, but this regulation will only apply to claims filed on or after March 27, 2017. *See* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html. (Last accessed September 19, 2017). The court notes that Dr. Kruse's medical opinion is dated August 30, 2012. (ECF No. 10-7 at 33.)

Magistrate Judge notes Plaintiff stated that Dr. Kruse opined that she believed Plaintiff was capable of performing simple, repetitive tasks, but the ALJ did not consider that statement to be an opinion on Plaintiff's ability to perform work-related activity. Even if Dr. Kruse's opinion that Plaintiff was "capable of performing simple repetitive tasks" was a limitation on Plaintiff's ability to work, the ALJ explained that Plaintiff's medical records and testimony were inconsistent with this limitation. The ALJ also discussed Plaintiff's ability to be attentive and concentrate and found that Plaintiff experienced "no more than mild limitations in activities of daily living, social functioning and concentration, persistence or pace." (*Id.*) In addition, the ALJ explained that Plaintiff's prior related work was a semi-skilled job and that the vocational expert testified she "retains the functional abilities necessary to perform her past relevant work as a childcare worker." (*Id.*)

Furthermore, the Magistrate Judge considered Plaintiff's final allegation that the ALJ did not explain his residual functional capacity findings as required by SSR 96-8p. (ECF No. 15 at 23.) The Magistrate Judge explained that Plaintiff's medical history, testimony regarding her symptoms, and her reported functional abilities were considered in the ALJ's residual functional capacity findings. (ECF No. 26 at 23-26.) The ALJ evaluated Plaintiff's obesity in conjunction with Plaintiff's complaints and found that it resulted in functional limitations consistent with his residual functional capacity assessment. (*Id.*) Finally, the ALJ indicated that Plaintiff's 5'11" height and weight of 220 pounds resulted in a corresponding body mass index of 30.7 which is in the Level I BMI range of 30.0 to 34.9. (*Id.*) The ALJ stated that he accounted for Plaintiff's obesity in determining her residual functional capacity. (*Id.*)

*B. Plaintiff's Response to the Magistrate Judge's Report*

In the Objections, Plaintiff asserts an error set forth by the Magistrate Judge's determination concerning her disability claim. First, Plaintiff argues that new evidence about her medical condition was submitted to the Appeals Council on September 2, 2015, but was not incorporated in its decision. (ECF No. 28 at 1-2). Second, Plaintiff argues that the ALJ incorrectly determined that she did not appear to have any significant cognitive difficulties. However, Dr. Kruse opined she appeared to be of below average intelligence and she may not be capable of managing her own funds. (ECF No. 28 at 3-6.) Third, Plaintiff argues that the Magistrate Judge failed to address the ALJ's findings regarding her obesity and how it limits the ability to work. (*Id*. at 6-7.)

Plaintiff initially argues that the ALJ did not resolve any conflict between the state agency opinions and Dr. Kruse's opinion because the ALJ did not acknowledge Dr. Kruse's findings about Plaintiff's capability of performing simple, repetitive work. (ECF No. 28 at 3-7.) However, the Magistrate Judge suggested that the ALJ explained his residual functional capacity assessment resolves any conflicts in evidence because the state agency chart reviewers found that Plaintiff had no more than mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace. (*Id*.)

Plaintiff further contends that the ALJ failed to explain why he would give more weight to non-examining chart reviewers as opposed to the findings of an evaluating physician; both chart reviewers confirmed her condition would allow her to perform simple tasks in a slower-paced, a lower stress work environment, with limited public contact. However, the Magistrate Judge apparently supported the ALJ's decision by stating that the vocational expert testified that Plaintiff "retains the functional abilities necessary to perform her past relevant work as a

childcare worker." (ECF No. 28 at 3-5.) Even though the Magistrate Judge stated that the ALJ did not consider that statement to be an opinion on Plaintiff's ability to perform work activity, she did not explain how this testimony supports the ALJ's findings that Plaintiff can perform semi-skilled work and Dr. Kruse's opinion that Plaintiff was capable of performing simple, repetitive tasks. (*Id*.) Finally, Plaintiff argues that the ALJ failed to explain her obesity diagnosis including limitations in stamina and exertional capabilities in lifting, standing, and walking. (ECF No. 28 at 6-7). Plaintiff contends that the ALJ recognized her obesity, but he did not address how it limited her if she could stand still and walk for six hours during an eight-hour workday. (*Id*.)

## C. The Court's Ruling

A court may remand a case to the Commissioner to consider additional evidence, but only if the evidence is new, material, and there is good cause for failure to incorporate that evidence into a prior proceeding. 42 U.S.C. § 405(g) (sentence six). *Melkonyan*, 501 U.S. at 97. In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F. 2d 954, 955 (4th Cir. 1985), superseded by statute, 42 U.S.C. § 405(g), as recognized by *Wilkins v. Sec'y, Dept. of Health and Human Servs.,* 925 F. 2d 769 (4th Cir.1991).[3] In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if these four requirements are met: (1) the evidence is relevant to the determination of disability during the

---

[3] The *Wilkins* court indicated that the *Borders*' Court's four part requirements was superseded by 42 U.S.C. § 405(g). However, the Fourth Circuit has continued to cite *Borders* as the authority when a plaintiff requests for the court to remand a Social Security disability claim based on new evidence and the U.S. Supreme Court has not suggested that *Borders* is not accurate. *See Washington v. Comm'r of Soc. Sec.*, 2009 WL 86737, at *5 (E.D. Va. 2009). Upon further evaluation, the court notes that Plaintiff would not be able to meet the materiality requirement of a new evidence pursuant to U.S.C. § 405(g).

time Plaintiff first filed her application and not simply cumulative; (2) the evidence is material to the extent that had the new evidence been before the Commissioner its decision "might reasonably have been different;" (3) there is good cause for Plaintiff's failure to submit the evidence when the claim was before the Commissioner; and (4) Plaintiff has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Borders*, 777 F. 2d at 955.

On September 2, 2015, Plaintiff submitted new medical evidence to the Appeals Council. According to Plaintiff, the Appeals Council did not make the new evidence part of the administrative record when it reviewed the ALJ's decision and only attached as a supplemental exhibit Plaintiff's correspondence dated December 5, 2015. As an alternative remedy, Plaintiff requests a remand of her case to the Acting Commissioner so that the new medical reports may be properly considered.

After the ALJ's decision, Plaintiff filed an appeal to the Appeals Council for further review of her application for Social Security benefits. Plaintiff developed new medical reports documenting her treatment of physical symptoms, as well as mental health treatment. Plaintiff apparently faxed a Functional Capacity Questionnaire (Physical) to the Appeals Council dated May 26, 2015, and signed by Physician's Assistant Stewart Darby. (ECF No. 15-1 at 1.) Mr. Darby reports that Plaintiff was diagnosed with "chronic pain/fibromyalgia" and finds Plaintiff's prognosis to be "fair." (*Id.*) Plaintiff's signs and symptoms include impaired sleep, depression, anxiety, muscle weakness, and reduced range of motion. (*Id.*) Mr. Darby indicates Plaintiff can stand, walk, and sit for zero-to-two hours in an eight-hour workday, occasionally lift less than 10 pounds, rarely lift 10 pounds, never lift 20 or 50 pounds, occasionally perform fingering, grasping, and handling during an eight-hour workday, but never stoop, bend, or crouch. (*Id.*) Mr.

Darby explained that Plaintiff would frequently experience pain severe enough to interfere with the attention and concentration needed to perform simple work tasks. (*Id*.)

Furthermore*,* a letter from Lisa A. Williams, M. Ed., LPC, dated June 23, 2015, was apparently faxed to the Appeals Council. This letter states that Plaintiff started outpatient counseling on February 10, 2015, and participated in seven individual therapy sessions. (ECF No. 15-1 at 3.)  During this period, Plaintiff's diagnosis was post-traumatic stress disorder and major depressive disorder. Ms. Williams explained that Plaintiff made limited progress in treatment, but remained depressed and had "ongoing triggers to her physical abuse [allegedly from her husband] that hinder her from obtaining and maintaining gainful employment. Based on her current symptoms, she is currently unable to work and would benefit from some financial assistance. (*Id.*) This new evidence was submitted to the court in conjunction with Plaintiff's brief. (*Id*.)

However, the Acting Commissioner argues that Plaintiff failed to submit the evidence while her claim was before the Appeals Council. (ECF No. 17.) The Acting Commissioner further argues that even if this evidence was timely submitted to the Appeals Council, Plaintiff would be unable to meet her burden of showing that it was both "new" and "material" because the submitted documents post-date the relevant period and were provided by nonacceptable medical sources. (*Id*. at 19-20.) As stated above, it appears that the new evidence was faxed on September 2, 2015, after the initial November 24, 2014 letter allowing for the submission of additional documents to the Appeals Council. The Appeals Council further notified Plaintiff she could send more evidence within thirty (30) days of November 25, 2015. Without question, the new evidence discusses Plaintiff's fibromyalgia diagnosis and mental health treatment for depression, which were not addressed in the ALJ's decision.

There are four factors Plaintiff must meet in order for the new medical evidence to be considered by the court. First, the evidence must not be cumulative. Mr. Darby's Functional Capacity Questionnaire (Physical), dated May 26, 2015, was relevant at the time of the ALJ's decision in this case. Furthermore, Ms. William's report is not cumulative because the letter, dated June 23, 2015, indicated that Plaintiff received outpatient counselling starting on February 10, 2015. Next, the evidence must be material. However, the opinions found in Mr. Darby and Ms. Williams' letters are not material. Plaintiff appears to assert that the opinions in the letters are material because "the evidentiary gap noted by the ALJ has been filled by the evidence that was submitted, but not included in the record, on September 2, 2015." (*Id*. at 15.) The court disagrees.

Mr. Darby is a Physician Assistant and not an acceptable medical source. Pursuant to 20 C.F.R. § 416.913, the Social Security Administration establishes as follows the sources that can provide evidence to establish a medically determinable impairment:

§ 416.913. Medical and other evidence of your impairment(s).

(a) Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). *See* § 416.908. Acceptable medical sources are—

(1) Licensed physicians (medical or osteopathic doctors);

(2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrists, for purposes of establishing visual disorders only (except, in the U.S. Virgin Islands, licensed optometrists, for the measurement of visual acuity and visual fields only);

(4) Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle; and

(5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only. For this source, "qualified" means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence from the American-Speech-Language-Hearing Association.

(d) Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments. Other sources include, but are not limited to—

(1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);

(2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);

(3) Public and private social welfare agency personnel; and

(4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).[4]

The regulation does not require an ALJ to consider the opinion of a Physician's Assistant.

Even if Mr. Darby and Ms. Williams' opinions were part of the record before the ALJ at the time

of his decision, it would not have been material because the ALJ was not required to consider the

---

[4] The Social Security Administration included three new kinds of medical sources to the "Acceptable Medical Sources" list for claims filed on or after March 27, 2017. These medical sources include Advanced Practice Registered Nurses, Audiologists, and Physician Assistants for impairments within their licensed scope of practice. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence: *See* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (Last accessed September 14, 2017).

findings and opinions contained therein in making his decision. The ALJ only has discretion to consider medical evidence provided by Mr. Darby and Ms. Williams to demonstrate Plaintiff's diagnosis of "Chronic Pain/Fibromyalgia, Post-Traumatic Stress Disorder, and Depressive Disorder" and the ALJ made a finding based on the evidence of record. Additionally, the Fourth Circuit has held that those other than "an 'acceptable medical source' do not qualify . . . to make a 'medical assessment' on a Social Security claimant's 'ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking and traveling' and their assessment can qualify only as a layman's opinion." *Lee v. Sullivan*, 945 F. 2d 687, 691 (4th Cir. 1991).

The court need not address the "good cause and the nature of the newly discovered evidence" requirements given Plaintiff has clearly failed to establish one of the requirements under *Borders*. Because the evidence is not material as contemplated under *Borders*, a remand under sentence six is not warranted. Plaintiff cannot establish that the new evidence is material such that it would have changed the ALJ's determination. A sentence six remand is appropriate only "when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

Next, the ALJ determined that Plaintiff is capable of performing past relevant work as a childcare worker. During the administrative hearing, a vocational expert acknowledged Plaintiff's past work as a childcare worker as "light and semiskilled, SVP 3." (ECF No. 10-2 at 77-79.) The ALJ asked the vocational expert to assume a hypothetical individual of the same age, education, and past work experience as Plaintiff with the following limitations:

> Exertionally, they'd be limited to medium work, as that term is defined in the regulations. This individual would have the following postural limitations. They

could frequently balance, stoop, kneel, crouch, crawl. They could only occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds. This individual would have to avoid concentrated exposure to hazardous machinery and unprotected heights. (*Id.*)

The ALJ asked if a person with those restrictions could perform any of Plaintiff's past work. The vocational expert testified that Plaintiff's "past work was light, therefore, it would be available under these limitations" both as Plaintiff performed it and as generally performed. (*Id.*)

In a second hypothetical, the ALJ asked the vocational expert to "assume all the same limitations as contained in hypothetical one" and to assume the individual is limited to light work as defined in the regulations. (*Id.*) The ALJ indicated that "[a]dditionally, regarding fingering of objects, that is fine manipulation, I would say no smaller than the size of a paperclip. The individual would be limited with the light upper extremities to frequently with that one. This hypothetical individual would be right-handed." (*Id.*) The vocational expert testified that all of Plaintiff's past work would be available, both as she performed it and as generally performed. (*Id.*)

After the administrative hearing, the ALJ made the following findings:

the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limits. In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour work day and sit for approximately 6 hours of an 8-hour workday with normal breaks. Additionally, the claimant can frequently balance, stoop, kneel, crouch or crawl. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant must avoid exposure to hazards including dangerous moving machinery and unprotected heights. The claimant can also perform occasional fingering and fine manipulation with objects no smaller than a paperclip.

The ALJ explained that Plaintiff's "sporadic treatment of acute complaints is inconsistent with a finding of persistently disabling conditions." (ECF No. 10-2 at 30-33.) The ALJ also noted that the "treatment records document minimal findings." (*Id.*) The ALJ stated that he "carefully

considered all evidence of record. Notably, no treating source has provided an opinion of the claimant's physical or mental functional capabilities." (*Id*.) The ALJ noted that "Dr. Kruse did not specifically opine as to the claimant's ability to perform work activity" but "considered the findings contained within Dr. Kruse's report, which are consistent with the evidence of record as a whole." (*Id*.) The ALJ then determined that the record evidence supported his residual functional capacity assessment and that Plaintiff is capable of performing her prior relevant work as a childcare worker. (*Id*.)

The Magistrate Judge explained that because Dr. Kruse's relationship with Plaintiff was solely for a disability report and not based on a patient-doctor relationship, she is considered a non-treating source. (ECF No. 26 at 21-22); *see also* 20 C.F.R. § 404.1527(a)(2). Although Dr. Kruse opined that she believed Plaintiff was capable of performing simple, repetitive tasks, the ALJ did not consider that statement to be an opinion on Plaintiff's ability to perform work activity. Even if Dr. Kruse's opinion that Plaintiff was "capable of performing simple repetitive tasks" was in fact a limitation on Plaintiff's ability to work, the ALJ discussed Plaintiff's medical records and testimony that are inconsistent with Plaintiff's alleged limitations. The ALJ explained Plaintiff's ability to sustain attention and concentration and found that Plaintiff experienced "no more than mild limitations in activities of daily living, social functioning and concentration, persistence or pace." (ECF No. 10-2 at 27.) Furthermore, the ALJ explained that Plaintiff's past relevant work was a semi-skilled job and that the vocational expert testified that Plaintiff "retains the functional abilities necessary to perform her past relevant work as a childcare worker." (*Id*. at 33.)

Next, Plaintiff argues that the ALJ should have considered more than Dr. Kruse's opinion that Plaintiff could perform semi-skilled work. Dr. Kruse conducted an examination of Plaintiff,

regarding her "significant cognitive difficulties." (ECF No. 28 at 4.) The ALJ explained that Dr. Kruse terminated the mental status examination because Plaintiff's "performance is invalid due to Ganser responding and a strong indication of negative impression management was noted." (ECF No. 10-7 at 34-35.)  Dr. Kruse did not diagnose and instead deferred to the medical record. (*Id*.)  Dr. Kruse noted in summary:

> She seems capable of understanding and following instructions. I do believe this patient is capable of using appropriate judgment. She appears aware of social cues. I believe she is capable of performing simple repetitive tasks. I am unable to determine if she is capable of managing funds appropriately and given her performance on calculations, this would indicate otherwise. Medical prognosis is deferred to medical evaluation.

The ALJ indicated he "considered the findings contained within Dr. Kruse's report, which are consistent with the evidence of record as a whole." (ECF No. 10-2 at 33.)  The Magistrate Judge suggested that the ALJ explained that his residual functional capacity resolves any conflicts in evidence because the state agency chart reviewers found that Plaintiff had no more than mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace. (ECF No. 28 at 3-5.) Plaintiff initially argues that the ALJ did not resolve any conflict between the state agency opinions and Dr. Kruse's opinion because the ALJ did not acknowledge Dr. Kruse's findings about Plaintiff's capability of performing simple, repetitive work. Furthermore, Plaintiff contends that the ALJ failed to explain why he would give more weight to non-examining chart reviewers as opposed to the findings of an evaluating physician. (*Id*.) Plaintiff further argues that the Magistrate Judge stated that "based on the ALJ's decision, the ALJ did not consider that statement to be an opinion on Plaintiff's ability to perform work activity." (*Id*.) However, the Magistrate Judge did not explain how this testimony supports the ALJ's findings that Plaintiff can perform semi-skilled work and consider Dr. Kruse's opinion that Plaintiff was capable of performing simple, repetitive tasks. (*Id*.)

Although Plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether Plaintiff is disabled for all forms of substantial gainful employment. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements which must be considered in making such an analysis. These elements are: (1) objective medical facts and clinical findings, (2) the opinions and conclusions of treating physicians, (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony, and (4) the claimant's education, vocational history, residual skills, and age. *Vitek v. Finch*, 438 F. 2d 1157, 1159–60 (4th Cir. 1971); *Underwood v. Ribicoff*, 298 F. 2d 850, 851 (4th Cir. 1962).

On May 20, 2014, Plaintiff appeared with her certified non-attorney representative, Mr. Charles L. Stover, at an administrative hearing and testified about her application for Social Security benefits. The ALJ asked Plaintiff the reason she thinks she cannot work and Plaintiff responded: "I deal with major back pain, depression, headaches, my ankle hurts and swells, and I deal with carpel tunnel in my left arm." (ECF No. 10-2 at 58.) Plaintiff also stated her back pain limited her mostly, and she suffers from fibromyalgia. (*Id*.)

 Plaintiff contends that the ALJ improperly concluded that Plaintiff did not appear to have any significant cognitive difficulties, but Dr. Kruse opined that Plaintiff appeared to be of below average intelligence and she may not be capable of managing her own funds. (ECF No. 28 at 4.) The ALJ reasonably considered Plaintiff's medical reports and explained that the "treatment records document minimal findings." (ECF No. 10-2 at 30-33.) The ALJ explained that "no treating source has provided an opinion of the claimant's physical or mental functional capabilities." (*Id*.) The ALJ also stated that he evaluated the opinion evidence under the regulatory factors and gave "little weight" to the September 2012 opinion of Dr. Thomas Motycka because Plaintiff's "vocational prospects are outside the area of his expertise." (*Id*.)

In conducting its review, the Appeals Council found that the ALJ's "assessed residual functional capacity is inconsistent with the hypothetical questions posed to the vocational expert at the hearing with respect to [Plaintiff's] environmental and manipulative limitations (ECF No. 10-4 at 69)," but the Appeals Council made the following findings:

> The claimant has the following severe impairments: degenerative joint disease of the bilateral knees and right ankle, carpal tunnel syndrome, rotator cuff syndrome, obstructive sleep apnea and obesity, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

> The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limits. In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour workday with normal breaks. Additionally, the claimant can frequently balance, stoop, kneel, crouch or crawl. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant must *avoid concentrated exposure to hazards* including dangerous moving machinery and unprotected heights. The claimant can also perform occasional fingering and fine manipulation, but with objects no smaller than a paperclip, *and she is limited to frequent lifting in the left upper extremity.*

(ECF No. 10-2 at 7) (emphasis added to distinguish the Appeals Council's assessment of Plaintiff's residual functional capacity and the ALJ's finding of Plaintiff's residual functional capacity). Fourth Circuit precedent does not require that a treating physician's testimony "be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Pursuant to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), the court in *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996) noted that:

> if a treating source's opinion on the issue(s) of the nature and severity of an impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, we will give it controlling weight. (*Id.*)

Factors that an ALJ considers in evaluating a medical opinion include whether the physician examined or treated the claimant, the length of the treatment relationship, the frequency of examination, and the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c). The court believes that the Appeals Council's assessment of Dr. Kruse's report, and Plaintiff's physical limitations for purposes of the hypothetical question, are both reasonable and consistent with the evidence of record. The court notes that Dr. Kruse was not a treating physician because she conducted one examination of Plaintiff. While the ALJ was free to give Dr. Kruse's opinions less weight because she was not a "treating source," the ALJ evaluated her opinions. The record evidence did not support Plaintiff's alleged limitations including "significant cognitive difficulties." Furthermore, it appears to the court that the vocational expert's evaluation of Plaintiff's vocational factors, and the hypothetical questions which the expert considered, are also consistent with the Appeals Council's findings that Plaintiff was capable of performing past relevant work as a childcare worker.

Finally, Plaintiff argues that the ALJ failed to explain her obesity diagnosis including limitations in stamina and exertional capabilities in lifting, standing, and walking (ECF No. 28 at 6-7). Plaintiff contends that the ALJ recognized her obesity, but he did not address how it limited her if she could stand still and walk for 6 hours during an 8-hour workday.[5] (*Id*.)  The ALJ stated

---

[5] The court records show that Plaintiff attached a Functional Capacity Questionnaire (Physical), dated May 26, 2015, and signed by Physician's Assistant Stewart Darby. (ECF No. 15-1 at 1.) Mr. Darby reports Plaintiff's diagnosis as "chronic pain/fibromyalgia" and finds Plaintiff's prognosis to be "fair." Mr. Darby reports that Plaintiff can stand, walk, and sit for zero-to-two hours in an eight-hour workday, occasionally lift less than 10 pounds, rarely lift 10 pounds, never lift 20 or 50 pounds. Mr. Darby also indicates Plaintiff can occasionally perform fingering, grasping, and handling during an eight-hour workday, but never stoop, bend, or crouch. Finally, Mr. Darby reports that Plaintiff would frequently experience pain severe enough to interfere with the attention and concentration needed to perform simple work tasks. The court observes that Mr. Darby's opinion on Plaintiff's Functional Capacity Questionnaire is contrary to the ALJ and the

that he accounted for Plaintiff's obesity in determining her residual functional capacity. The Magistrate Judge explained that a failure to address a claimant's obesity or its effects may be harmless error if the record does not demonstrate that obesity imposes any additional limitations on the claimant's ability to work (ECF No. 26 at 24-25). The court notes that the ALJ considered the impact of Plaintiff's obesity as one of Plaintiff's severe impairments. (ECF No. 10-2 at 7, 26.) However, the ALJ's residual functional capacity finding was based on Plaintiff's objective medical records, the opinions and conclusions of treating and consultative physicians, subjective evidence of physical manifestations of impairments, and Plaintiff's education, vocational history, residual skills, and age. The court further finds there is no objective evidence in the treatment records that Plaintiff's obesity was causing any functional limitations.

After reviewing all of the evidence submitted, the court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 26) and Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (ECF No. 28) is **OVERRULED.**

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

September 26, 2017
Columbia, South Carolina

---

Appeals Council's assessment of Plaintiff's residual functional capacity. *See also* (ECF No. 10-2 at 28.)